TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ELIA HERRERA (Cal. Bar No. 293278)
ASHLEY FILLMORE (Cal. Bar. No. 332167)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2024/2416
    Facsimile: (213) 894-0141
    E-mail:    elia.herrera@usdoj.gov
               ashley.fillmore@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>          v.<br><br>MARINA HAGHNAZARIAN,<br><br>      Defendant. | No. 20-CR-00227-PA-2<br><br>PLEA AGREEMENT FOR DEFENDANT<br>MARINA HAGHNAZARIAN |

    1.   This constitutes the plea agreement between Marina Haghnazarian ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

        a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Count Five of the

CDP
8/2/21

1    indictment in <u>United States v. Marina Haghnazarian</u>, CR No. 20-227-PA,

2    which charges defendant with bank fraud, in violation of 18 U.S.C.

3    § 1344(2).

4            b.   Not contest facts agreed to in this agreement.

5            c.   Abide by all agreements regarding sentencing contained

6    in this agreement.

7            d.   Appear for all court appearances, surrender as ordered

8    for service of sentence, obey all conditions of any bond, and obey

9    any other ongoing court order in this matter.

10           e.   Agree that all court appearances, including her change

11   of plea hearing and sentencing hearing, may proceed by video-

12   teleconference ("VTC") or telephone, if VTC is not reasonably

13   available, so long as such appearances are authorized by Order of the

14   Chief Judge 20-097, 20-186, 21-031 or another order, rule, or

15   statute.  Defendant understands that, under the Constitution, the

16   United States Code, the Federal Rules of Criminal Procedure

17   (including Rules 11, 32, and 43), she may have the right to be

18   physically present at these hearings.  Defendant understands that

19   right and, after consulting with counsel, voluntarily agrees to waive

20   it and to proceed remotely.  Defense counsel also joins in this

21   consent, agreement, and waiver.  Specifically, this agreement

22   includes, but is not limited to, the following:

23           i.   Defendant consents under Section 15002(b) of the

24   CARES Act to proceed with her change of plea hearing by VTC or

25   telephone, if VTC is not reasonably available.

26           ii.  Defendant consents under 18 U.S.C. § 3148 and

27   Section 15002(b) of the CARES Act to proceed with any hearing

28

regarding alleged violations of the conditions of pre-trial release by VTC or telephone, if VTC is not reasonably available.

      f.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

      g.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

      h.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

      i.   At or before the time of sentencing, satisfy any and all restitution/fine obligations based on ability to pay by delivering a certified check or money order to the Fiscal Clerk of the Court in the amount of $57,989.61, to be held until the date of sentencing and, thereafter, applied to satisfy defendant's restitution/fine balance.  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, 11th Floor, Los Angeles, California 90012.

      j.   Ability to pay shall be assessed based on the Financial Disclosure Statement, referenced below, and all other relevant information relating to ability to pay.

      k.   Defendant agrees that any and all restitution/fine obligations ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

1        l.   Complete the Financial Disclosure Statement on a form

2 provided by the USAO and, within 30 days of defendant's entry of a

3 guilty plea, deliver the signed and dated statement, along with all

4 of the documents requested therein, to the USAO by either email at

5 usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

6 Litigation Section at 300 N. Los Angeles St., Suite 7516, Los

7 Angeles, CA 90012.

8        m.   Authorize the USAO to obtain a credit report upon

9 returning a signed copy of this plea agreement.

10        n.   Consent to the USAO inspecting and copying all of

11 defendant's financial documents and financial information held by the

12 United States Probation and Pretrial Services Office.

13 THE USAO'S OBLIGATIONS

14   3.   The USAO agrees to:

15        a.   Not contest facts agreed to in this agreement.

16        b.   Abide by all agreements regarding sentencing contained

17 in this agreement.

18        c.   At the time of sentencing, move to dismiss the

19 remaining count of the indictment as against defendant.  Defendant

20 agrees, however, that at the time of sentencing the Court may

21 consider any dismissed charges in determining the applicable

22 Sentencing Guidelines range, the propriety and extent of any

23 departure from that range, and the sentence to be imposed.

24        d.   At the time of sentencing, provided that defendant

25 demonstrates an acceptance of responsibility for the offense up to

26 and including the time of sentencing, recommend a two-level reduction

27 in the applicable Sentencing Guidelines offense level, pursuant to

28

4

1  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

2  additional one-level reduction if available under that section.

3       e.  At the time of sentencing, provided that (i) defendant

4  complies with paragraph 2 and the other provisions of this agreement

5  up through the time of sentencing, (ii) the Court adopts the

6  Sentencing Factors set forth in paragraph 13, and (iii) the Court

7  does not depart downward in criminal history category, recommend a

8  two-level downward variance in offense level under <u>Booker v. United</u>

9  <u>States</u>, 543 U.S. 220 (2005), based on the factors set forth in 18

10 U.S.C. § 3553(a)(1)-(7), including defendant's personal history and

11 characteristics and the unique circumstances of this case.

12      f.  Recommend that defendant be sentenced to a term of

13 imprisonment no higher than the low end of the applicable Sentencing

14 Guidelines range, provided that the offense level used by the Court

15 to determine that range is 12 or higher and provided that the Court

16 does not depart downward in offense level or criminal history

17 category.  For purposes of this agreement, the low end of the

18 Sentencing Guidelines range is that defined by the Sentencing Table

19 in U.S.S.G. Chapter 5, Part A, without regard to reductions in the

20 term of imprisonment that may be permissible through the substitution

21 of community confinement or home detention as a result of the offense

22 level falling within Zone B or Zone C of the Sentencing Table.

23 NATURE OF THE OFFENSE

24   4.  Defendant understands that for defendant to be guilty of

25 the crime charged in Count Five, that is, bank fraud, in violation of

26 Title 18, United States Code, Section 1344(2), the following must be

27 true:

28

a.    First, defendant knowingly carried out a scheme or plan to obtain money or property from a financial institution by making false statements or promises;

b.    Second, defendant knew that the statements or promises were false;

c.    Third, the statements or promises were material, that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;

d.    Fourth, defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

e.    Fifth, the financial institution was federally insured.

PENALTIES AND RESTITUTION

5.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1344(2), is: thirty years' imprisonment; a five-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.    Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that

victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges. The parties currently believe that the applicable amount of restitution is approximately $57,989.61, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.   Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.  Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status.  Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

11.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support the plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on a date unknown and continuing through on or about May 30, 2020, in Los Angeles and San Bernardino Counties, within the Central District of California, defendant and co-defendant Arno Abramian, each aiding and abetting the other, knowingly and with intent to defraud, engaged in a fraudulent scheme to obtain monies, funds, credits, assets, and other property owned by and in the custody and control of Bank of America, N.A. ("Bank of America") and Wells Fargo Bank, N.A. ("Wells Fargo"), which are financial institutions insured by the Federal Deposit Insurance Corporation.

The fraudulent scheme operated as follows: co-defendant Abramian would steal checks, debit cards, and credit cards from mailboxes, including post office boxes inside of United States Post Office locations.  Defendant would then open bank accounts at financial institutions in the names of a victim business.  In so doing, defendant would falsely represent to the financial institutions that she had the victim businesses' authority to open the accounts and concealed from the financial institutions that she was not affiliated in any way with the victim businesses.  Co-defendant Abramian then

would deposit stolen checks into the fraudulent bank accounts that defendant had opened.  In doing so, co-defendant Abramian falsely represented to the financial institutions that he had authority to deposit the checks and concealed from the financial institutions that he did not have authority to possess and deposit the checks. Defendant and co-defendant Abramian subsequently would withdraw, transfer, and otherwise steal money from the fraudulent accounts for their personal use.

Specifically, on November 22, 2019, defendant opened a bank account at Wells Fargo in the name of victim-business M.D.B. and listed herself as sole proprietor of victim-business M.D.B. Defendant knew that she did not have authority to open the account in the name of victim-business M.D.B. and acted with the intent to defraud Wells Fargo.  That same day, co-defendant Abramian deposited four stolen checks into the fraudulent M.D.B. account, totaling approximately $56,201.33.  Co-defendant Abramian did not have authority to possess or use those stolen checks.  Co-defendant Abramian subsequently withdrew the funds from the fraudulent M.D.B. account by repeatedly using a debit card to withdraw cash from the account and by writing checks from the account and then depositing them into his personal account.  Defendant also withdrew money from the fraudulent M.D.B. account by writing cashier's checks to herself from the account, writing checks to other co-schemers from the account, and writing checks from the account and then depositing them into an account controlled by co-defendant Abramian.  Defendant and co-defendant Abramian also transferred money from the fraudulent M.D.B. account to accounts they controlled using the "Zelle" online

bank-to-bank transfer system.  In total, defendants' fraudulent

scheme caused Wells Fargo actual losses of approximately $48,167.79.

During and in connection with this fraudulent scheme, co-

defendant Abramian knowingly possessed and used means of

identification belonging to other persons, namely, the names and bank

account numbers of victims L.S., C.S., A.T., and L.R.

In addition to the M.D.B. fraudulent account, and in furtherance

of the fraudulent scheme, in April 2019, co-defendant Abramian opened

a fraudulent business bank account in the name of victim-business

R.F.S. at Wells Fargo.  Co-defendant Abramian and other co-schemers

deposited stolen checks totaling $19,690.89 into that fraudulent

account and attempted to withdraw money from the account, including

by writing a check from this account to defendant.  Co-defendant

Abramian and the co-schemers successfully withdrew at least $9,821.82

from this fraudulent account.  Additionally, in March 2020, defendant

opened fraudulent bank accounts at Bank of America in the names of

victim-businesses M.L.R. and I.E., into which defendant and other co-

schemers then deposited stolen checks totaling approximately

$32,019.94.  In addition, pursuant to a search warrant, officers

reviewed a phone that belonged to defendant.  The phone contained

images of the following access devices belonging to individual

victims: approximately 10 profiles with personal identifying

information, including social security numbers and dates of birth;

approximately 4 credit/debit cards; approximately 1 check; and

approximately 1 drivers license/identification card.  The total

intended loss relating to these access devices is at least $6,000.

Defendant's bank fraud scheme involved more than 10 victims and

had a total intended loss amount (that is, the amount of pecuniary

harm defendant intended to inflict) of more than $95,000 and a total actual loss amount of approximately $57,989.61.

SENTENCING FACTORS

12.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss of More Than $95,000: | +8 | U.S.S.G. § 2B1.1(b)(1)(B) |
| Offense Involved 10 or More Victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound

14.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.   Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.   The right to persist in a plea of not guilty.

        b.   The right to a speedy and public trial by jury.

        c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

        d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

        e.   The right to confront and cross-examine witnesses against defendant.

        f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

        g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

1    h. Any and all rights to pursue any affirmative defenses,

2 Fourth Amendment or Fifth Amendment claims, and other pretrial

3 motions that have been filed or could be filed.

4        WAIVER OF APPEAL OF CONVICTION

5   17. Defendant understands that, with the exception of an appeal

6 based on a claim that defendant's guilty plea was involuntary, by

7 pleading guilty defendant is waiving and giving up any right to

8 appeal defendant's conviction on the offense to which defendant is

9 pleading guilty.  Defendant understands that this waiver includes,

10 but is not limited to, arguments that the statute to which defendant

11 is pleading guilty is unconstitutional, and any and all claims that

12 the statement of facts provided herein is insufficient to support

13 defendant's plea of guilty.

14   WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

15   18. Defendant agrees that, provided the Court imposes a total

16 term of imprisonment within or below the range corresponding to an

17 offense level of 17 and the criminal history category calculated by

18 the Court, defendant gives up the right to appeal all of the

19 following: (a) the procedures and calculations used to determine and

20 impose any portion of the sentence; (b) the term of imprisonment

21 imposed by the Court; (c) the fine imposed by the Court, provided it

22 is within the statutory maximum; (d) to the extent permitted by law,

23 the constitutionality or legality of defendant's sentence, provided

24 it is within the statutory maximum; (e) the term of probation or

25 supervised release imposed by the Court, provided it is within the

26 statutory maximum; (f) the amount and terms of any restitution order,

27 provided it requires payment of no more than $57,989.61; and (g) any

28 of the following conditions of probation or supervised release

imposed by the Court: the conditions set forth in Second Amended General Order No. 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

20.   The USAO agrees that, provided all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 12 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $57,989.61.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

21.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was

involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

22.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

23.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

24.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have

cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

25.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any

evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the

maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

29.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

_____          August 9, 2021
ELIA HERRERA                              _____
ASHLEY FILLMORE                           Date
Assistant United States Attorneys

_____          8/9/2021
MARINA HAGHAZARIAN                        _____
Defendant                                 Date

                                          8/9/2021
_____          _____
JILBERT TAHMAZIAN                         Date
Attorney for Defendant Marina
Haghnazarian

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

MARINA HAGHNAZARIAN
Defendant

8/9/2021
Date

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Defendant Marina Haghnazarian's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____     8/9/2021
JILBERT TAHMAZIAN                    _____
Attorney for Defendant Marina        Date
Haghnazarian